CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

FEB 17 2010

JOHN F. CORCORAN, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff,* <br> v. <br> JOHN LAWTON LEDINGHAM, <br> *Defendant.* | CIVIL NO. 6:07-CR-00007 <br><br> OPINION <br><br> JUDGE NORMAN K. MOON |

This matter is before the Court on Defendant's motion for a new trial [docket no. 73]. On December 23, 2009, Defendant John Lawton Ledingham ("Defendant") filed a motion for a new trial based on "newly discovered evidence," which consists of a recently obtained diary belonging to Defendant's ex-wife, Rebecca Ledingham. Defendant argues that the recently discovered diary contains evidence indicating that the firearms that formed the basis of Defendant's criminal conviction were actually owned by Rebecca Ledingham. Moreover, Defendant argues that the diary would have served to impeach the testimony of Rebecca Ledingham at trial, and that there is a "reasonable probability" that the outcome of his criminal trial would have been different had the Defendant been aware of and had access to the diary at the time of trial. For the reasons stated herein, Defendant's motion for a new trial is denied.

## I. BACKGROUND

On March 10, 2006, authorities executed a search warrant at Defendant's residence at 223 Kimberlea Road, Madison Heights, Virginia. During that search, agents located and seized several firearms and ammunition from the residence. On February 15, 2007, a federal grand jury

returned an indictment against Defendant, charging him in relevant part with possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. §922(g)(1), and with possession of ammunition after having been convicted of a felony, in violation of 18 U.S.C. §922(g)(1). On May 9, 2007, a jury trial began on the two aforementioned charges.

The government's first witness at trial was Special Agent R.K. Kincaid ("Kincaid") of the Virginia State Police, who had obtained and executed the search warrant for Defendant's residence. Kincaid testified that during the search he found firearms in a gun cabinet in a closet in the foyer near the front entrance of the house. Furthermore, Kincaid testified that Defendant was at home during the search and told Kincaid that opening the gun cabinet was not difficult, and that Kincaid could "stick anything in [the lock] and turn it" in order to open the cabinet. After opening the cabinet, Kincaid found a .22 caliber rifle and a handgun. Kincaid also found 7.62 millimeter rifle ammunition in an unlocked closet next to the gun cabinet. Kincaid further testified that he found .25 caliber ammunition in a desk drawer in a separate office or "shop" area of the Defendant's property. Agents also discovered weapon reloading equipment in the shop. Moreover, in a cabinet in the office, agents similarly found items associated with reloading weapons. Kincaid testified that Defendant informed him that there was a .22 caliber pistol in the residence that belonged to Defendant's wife, and that there was ammunition and reloading supplies in the office area that belonged to another individual which was kept under lock and key.

On cross-examination, Kincaid acknowledged that shortly after completing the search of Defendant's residence, he received a call from Rebecca Ledingham, Defendant's wife at the time.[1] Ledingham told Kincaid that the three weapons found in Defendant's residence were

---

[1] At the time of the search of Defendant's residence, Defendant and Rebecca Ledingham were in the process of divorcing, and Rebecca Ledingham was not living at the residence with Defendant.

family heirlooms that belonged to her.

Frank Wills, a friend and lifelong neighbor of Defendant, testified that at the request of Defendant, Wills contacted Kincaid to tell him that the reloading equipment found in Defendant's residence actually belonged to Wills. Additionally, Wills told Kincaid that his wife had asked him to store the reloading equipment at Defendant's residence because she did not want any of it in her home. Wills testified at trial that the statements previously made to Kincaid claiming ownership of the reloading equipment were false, and were made at the request of Defendant.

Rebecca Ledingham, Defendant's former wife, also testified at trial. She testified that during the course of the marriage, Defendant informed her that he was a convicted felon, and that he was therefore not supposed to "have guns," but that if they did have guns in the house, "they would need to be [hers]." Ms. Ledingham further testified that Defendant did acquire guns during the marriage, including a .22 rifle, a .22 pistol and a 12-gauge shotgun. She also testified that for a period of time she and Defendant used the guns acquired by Defendant for recreational shooting, but that she had not personally handled any of the guns since 1998 or 1999. She separated from her husband on February 12, 2006, and moved out of the residence at 223 Kimberlea Road.

Shortly after the search warrant was executed, Defendant contacted Ms. Ledingham and asked to meet with her. According to her trial testimony, during that meeting the two discussed what Ms. Ledingham should say to the authorities in order to claim the guns as her property. Ms. Ledingham agreed to make such a claim because she thought doing so would help the Defendant avoid prison and therefore be more involved in the life of their young son. After that meeting, Ms. Ledingham called Agent Kincaid and claimed the seized items as her own.

Additionally, Ms. Ledingham contacted an ATF agent and told him that some of the items seized at Defendant's residence were her family heirlooms, and that other items had been purchased at flea markets. Ms. Ledingham told the ATF agent that she wanted the items returned to her. At trial, Ms. Ledingham testified that none of these previous statements to either Kincaid or the ATF agent were true.

Ms. Ledingham also testified that she had previously presented falsified receipts and bills of sale of the seized firearms to the US Atttorney's Office and Agent Kincaid, and that she had falsely created those documents at Defendant's request. Furthermore, Ms. Ledingham testified that she signed a property claim form claiming the seized items as her own, again at the request of Defendant. However, at trial she testified that none of the seized items belonged to her.

On May 9, 2007, the jury returned verdicts of guilty on both counts. On September 11, 2007, the Court imposed a sentence of 21 months on each count, to be served concurrently. On August 7, 2009, the Fourth Circuit affirmed Defendant's convictions and judgment of this Court. On November 4, 2009, Defendant filed a Petition for Writ of Certiorari in the United States Supreme Court, which was denied on December 7, 2009. On December 22, 2009, Defendant filed the instant motion for a new trial. In support of that motion, Defendant submitted two pages from the recently discovered personal diary of Rebecca Ledingham.[2] The first submitted entry, dated March 12, 2006, discusses in relevant part the search conducted at Defendant's residence on March 10, 2006:

> I get a phone call from Becky about 10:30 pm that John's getting busted – Perry had called them, there were 22 state cars in the driveway & they had searched his

---

[2] The diary pages were submitted as "Exhibit A" to Defendant's motion for new trial. Several weeks after submitting the motion and exhibit, Defendant filed a motion to seal, asking the Court to seal the exhibit [docket no. 82]. In a Memorandum Opinion and Order dated February 4, 2010, this Court temporarily granted Defendant's motion, but ordered him to submitted a redacted version of the exhibit within five days of the Order [docket no. 83]. Defendant failed to comply with the Order, prompting the Clerk to remove the exhibit from the docket, pursuant to the Court's instruction in its February 4th Order.

place too, had a warrant that said they were was an informant (found this out after the fact), that he was supposed to get a large shipment in of pot . . . They had warrants for guns too which were mine. Anyway they took like 2 ½ guns, asst ammo, a reloading kit that was Jimmy Will's . . .

The second diary entry, dated March 22, 2006, states in relevant part:

I was supposed to meet with the State Troopers today over getting my guns back but Thank God they cancelled. They already put Jimmy Wills through the wringer . . .

Defendant argues that these diary entries impeach Rebecca Ledingham's trial testimony regarding ownership of the guns and ammunition at issue. At trial, Ms. Ledingham testified that she had previously claimed ownership of the firearms and ammunition solely at the behest of Defendant, and that those items did not in fact belong to her. Defendant argues the diary entries demonstrate that her testimony disclaiming ownership was false, and that she "engaged in a deliberate deception to result in the incarceration of [Defendant] for the possession of firearms she owned." Moreover, Defendant argues that if the diary had been available at the time of trial, there is "a reasonable possibility that . . . the result of the proceedings would have been different." Therefore, based on the Ledingham diary, Defendant asks this Court to grant him a new trial on the possession of firearms and ammunition charges.

## II. STANDARD OF REVIEW

Upon motion of a defendant, a district court may vacate any judgment and grant a new trial if the interest of justice so requires. Fed. Rul. Crim. P. 33. The Fourth Circuit has developed a five-part test for evaluating motions for new trial based on newly discovered evidence. In *United States v. Chavis*, 880 F.2d, 788, 793 (4th Cir. 1989), the Court held that a motion for new trial should only be granted if all of the following factors are met: (1) is the evidence, in fact, newly discovered; (2) are facts alleged from which the court may infer due diligence on the part of the movant; (3) is the evidence relied upon not merely cumulative or

impeaching; (4) is the evidence material to the issues involved; and (5) would the evidence probably result in acquittal at a new trial? "Unless the answer to each of these inquiries is affirmative, a new trial is not appropriate." *Id.* New evidence going only to the credibility of a witness does not generally warrant a new trial. *United States v. Custis*, 988 F.2d 1355, 1359 (4th Cir. 1993) (citations omitted). There may, however, be an exceptional rare case that would justify granting a new trial solely on the basis of newly discovered impeachment evidence, such as where the government's case rested entirely on the uncorroborated testimony of a single witness who was discovered after trial to be utterly unworthy of being believed because he had lied in a string of previous cases. *Id.* (citing *United States v. Taglia*, 922 F.2d 413, 415-16 (7th Cir. 1991)). Finally, a district court "'should exercise its discretion to grant a new trial sparingly,' and . . . should do so 'only when the evidence weighs heavily against the verdict.'" *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003) (quoting *United States v. Wilson*, 118 F.3d 228, 237 (4th Cir. 1997)).

### III. DISCUSSION

As noted previously, Defendant contends that a recently discovered diary of Rebecca Ledingham contains evidence that would have served to impeach her trial testimony. Had the diary been available at trial, Defendant argues, there is a "reasonable possibility" that the jury would have found Defendant not guilty of the alleged crimes. Applying as I must the five factors of *United States v. Chavis*, I conclude that Defendant's motion should be denied.

Turning to the first prong of the *Chavis* test, Defendant argues that the Ledingham diary is "newly discovered" evidence. Defendant alleges that the Ledingham diary was reviewed and given to him by his nine year old son, who confided in him that Ms. Ledingham kept a diary and that the diary reveals information about the true ownership of the guns at issue during

Defendant's trial.[3] The government argues that Defendant's claim is "patently unbelievable," because there is simply no way that a nine year old boy could have reviewed the entire diary and discovered within it the relatively miniscule portion that discusses the guns.[4] Yet, however unlikely it may be that the son discovered, reviewed, and analyzed the diary, I will assume that Defendant obtained the diary in the manner he alleges. Therefore, I will treat the first *Chavis* factor as satisfied.

Turning to the second prong of the *Chavis* inquiry, Defendant makes no direct argument with regard to exercising due diligence in discovering the diary. Defendant similarly has submitted no affidavit or other evidence to support an inference of due diligence on his part. In his motion, Defendant states that he discovered the existence of the Ledingham diary because his son, who lives with Ms. Ledingham, "recently confided in him" that the son discovered the existence and contents of the diary. The government does not argue in response that any diligence on Defendant's part could have resulted in earlier discovery of the diary. Indeed, the personal nature of a diary supports the notion that Defendant may well have been unaware that Ms. Ledingham ever kept a diary. Accordingly, I will treat the second *Chavis* factor has having been satisfied.

The third element of the *Chavis* test states that evidence relied upon as a basis for a new trial cannot be merely cumulative or impeaching. Moreover, the Fourth Circuit has emphasized that "new evidence going only to the credibility of a witness does not generally warrant the granting of a new trial." *U.S. v. Custis*, 988 F.2d at 1359 (citing *United States v. Stockton*, 788 F.2d 210, 220 (4th Cir. 1986); *United States v. Williams*, 415 F.2d 232, 233-34 (4th Cir. 1969)). However, the *Custis* court noted that in an exceptional rare case a new trial may be warranted

---

[3] Rebecca Ledingham is the boy's mother, and currently has custody of him.
[4] The government submitted a full copy of the diary for *in camera* review, which covers a three-year period and is indeed voluminous.

based solely on newly discovered impeachment evidence. *Custis*, 988 F.2d at 1359. Such an exceptional case, according to *Custis*, is one in which the government's case rested entirely on the uncorroborated testimony of a single witness who was later discovered to be utterly unworthy of being believed because he had lied in a string of previous cases. *Id.* (citing *United States v. Taglia*, 922 F.2d 413, 415-16 (7th Cir. 1991)).

The Ledingham diary is "merely cumulative or impeaching." Rebecca Ledingham's trial testimony was inconsistent with her prior statements to the police and to the ATF agent. In those prior statements, Ms. Ledingham advised the authorities that the guns and ammunition seized from Defendant's residence belonged to her. However, at trial she admitted that those previous statements were false. Similarly, she also acknowledged at trial that her previous claim to the weapons via completing an asset claim form was also false. Therefore, the diary statements in which Ms. Ledingham appears to assert ownership of the guns are cumulative with regard to the evidence at trial demonstrating her previous ownership claims. The Defendant cross-examined Ms. Ledingham, and the jury therefore was left to make a credibility determination based on the inconsistent statements of Ms. Ledingham. The new evidence, which would go directly to the credibility of Ms. Ledingham and her conflicting statements regarding the ownership of the guns, is precisely the type of new evidence that the *Custis* court held "generally does not warrant a new trial." *U.S. v. Custis*, 988 F.2d at 1359 (citations omitted). Indeed, Defendant acknowledges in his motion that the utility of the new evidence is that it "impeaches Rebecca Ledingham's [trial] testimony." Thus, because the diary is merely cumulative or impeaching, it cannot satisfy the third prong of *Chavis* unless it is the "exceptional rare case" in which the government's case rested entirely on the uncorroborated testimony of a single witness who was later discovered to be utterly unworthy of being believed because he had lied in a string of previous cases.

The present case is not the "exceptional rare case" as described by the *Custis* court. Indeed, the government's case against Defendant did not rest entirely on the uncorroborated testimony of Rebecca Ledingham. Rather, the government presented evidence that police officers recovered weapons and ammunition from Defendant's residence. During the search of Defendant's residence, Defendant was the only person living at the residence and he advised the officers how to open a cabinet containing the seized guns and ammunition. Additionally, the government presented evidence of seized reloading equipment, containers of black power, and other items associated with reloading ammunition that were found on Defendant's property. Moreover, the government presented testimony from Frank Wills, a neighbor and friend of Defendant. Wills testified that although he originally told authorities that some items seized from Defendant's property belonged to him, his original claim to that property was a lie. Indeed, Wills testified that he made those false claims to the property at the request of Defendant.[5] Finally, there is no evidence that Rebecca Ledingham has ever lied in other cases or court proceedings, as required by the "exceptional rare case" strictures of *Chavis*. Accordingly, the diary evidence here fails to satisfy the third prong of the *Custis* test. Although this failure can end the inquiry into whether Defendant is entitled to a new trial, I will consider the remaining *Chavis* factors.

The fourth *Chavis* factor requires a court to consider whether the newly discovered evidence is material to the issues involved. As noted previously, the diary does go to the credibility of Ms. Ledingham and her trial testimony. Therefore, the diary is material, and satisfies the fourth *Chavis* factor.

The fifth and final *Chavis* factor requires the Court to consider whether the new evidence

---

[5] Notably, Rebecca Ledingham similarly testified that she had made previous false claims to the guns and ammunition at the request of Defendant. She later recanted those claims in her grand jury testimony and at trial.

would probably result in acquittal at a new trial. *Chavis*, 880 F.2d, 788, 793 (4th Cir. 1989). While the diary would have provided Defendant additional opportunity to attack the credibility of Ms. Ledingham, it is not at all clear that such further credibility attacks would have resulted in a different outcome. Indeed, Ms. Ledingham's credibility had already been significantly attacked based on her prior inconsistent statements to the police, the ATF, and her falsely signing the asset claim form. Moreover, there was significant evidence beyond Ms. Ledingham's testimony to support Defendant's conviction. In particular, the testimony of the agent who seized the guns and ammunition from Defendant's residence, and the testimony of Frank Wills, who testified that Defendant asked him to lie about ownership of the reloading equipment found in Defendant's shop. Therefore, even if Ms. Ledingham's credibility could be further impugned by the recently discovered diary, there is nevertheless significant alternative evidence beyond her testimony to support Defendant's conviction.

Defendant's argument that the diary's alleged claims of ownership of the weapons would probably lead to an acquittal misses the mark in another regard. Defendant claims that Ms. Ledingham's diary demonstrates her ownership of the weapons and ammunition at issue, and therefore exonerates Defendant. However, Defendant was not convicted of *owning* the weapons. Rather, 18 U.S.C. § 922(g)(1) only requires that a jury find that a defendant *possessed* weapons.[6] Moreover, actual possession is not necessary to sustain a conviction for possession under § 922(g)(1); constructive possession is sufficient. *See, e.g., United States v. Branch*, 537 F.3d 328, 342-43 (4th Cir 2008); *United States v. Wilson*, 484 F.3d 267, 282 (4th Cir. 2007). A

---

[6] "[I]n order to prove a violation of § 922(g)(1), the government must prove, beyond a reasonable doubt, that: (1) the defendant previously had been convicted of a crime punishable by a term of imprisonment exceeding one year; (2) the defendant *knowingly possessed*, transported, shipped, or received the firearm; and (3) the possession was in or affecting commerce, because the firearm had traveled in interstate or foreign commerce at some point during its existence." *United States v. Langley*, 62 F.3d 602, 606 (4th Cir. 1995) (en banc) (emphasis added). *Accord United States v. Scott*, 424 F.3d 431, 435 (4th Cir. 2005), *cert. denied*, 546 U.S. 1051 (2005); *and United States v. Hobbs*, 136 F.3d 384, 390 (4th Cir. 1998), *cert denied*, 524 U.S. 945 (1998). At trial, Defendant stipulated to the first two elements.

person has constructive possession when he "exercises, or has power to exercise dominion and control over the item." *United States v. Laughman*, 618 F.2d 1067, 1077 (4th Cir 1980). *Accord Wilson*, 484 F.3d at 282 *and United States v. Jones*, 204 F.3d 541, 543-44 (4th Cir 2000). At trial, the government presented evidence that Defendant had the power to "exercise dominion and control" over the seized firearms and ammunition. Indeed, the jury heard evidence that Defendant was the sole resident of the house in which the items were found, that he informed agents where some of the seized items were, and that he instructed the agents how to open a gun cabinet containing some of the seized weapons.[7] Therefore, even if the diary's alleged claims of legal ownership of the weapons are true, they still fail to undermine Defendant's conviction for possessing a firearm and ammunition as a convicted felon. Accordingly, I conclude that the new evidence probably would not result in an acquittal.

## IV. CONCLUSION

For the reasons stated herein, Defendant's motion for a new trial [docket no. 73] is denied. An appropriate Order will follow.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and accompanying Order to all counsel of record and to Defendant.

ENTERED: This 17th Day of February, 2010.

---

[7] At trial, the Court instructed the jury as to the definition of the possession element of the offense as follows:

> Possession is not the same thing as ownership. Possession, as the term is used in this case, may be of two kinds: actual possession and constructive possession. A person who knowingly has direct physical control over a thing at a given time is then in actual possession of it. A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it. Whether the defendant constructively possessed the firearm and/or the ammunition in question, as the government contends, or was merely present where the firearm and/or ammunition was found is a fact you must determine based on all of the evidence. Proof that the defendant constructively possessed the firearm and/or ammunition is sufficient proof of the possession element to support conviction. However, if the defendant was merely present where the firearm and ammunition was located and did not actually or constructively possess them, you should return a verdict of not guilty. (Trial. Tr. 164-65).

-11-

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE